Citation Nr: 1554507 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 11-08 362 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for bilateral carpal tunnel syndrome, to include as secondary to service-connected Raynaud's syndrome.
 
2. Entitlement to an increased rating for Raynaud's syndrome, in excess of 10 percent prior to December 22, 2008, and in excess of 40 percent thereafter.


REPRESENTATION

Appellant represented by: Florida Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Appellant and his daughter



ATTORNEY FOR THE BOARD

Matthew Schlickenmaier, Associate Counsel


INTRODUCTION

The Veteran had active duty service from February 1980 to February 2000.

This matter initially came before the Board of Veterans' Appeals (Board) on an appeal from a February 2008 rating decision issued by the Regional Office (RO) in St. Petersburg, Florida.

In February 2015, the Veteran testified at a Travel Board hearing before the undersigned. A transcript of the hearing is of record.

In June 2015, at the request of the Veteran, the Board remanded the appeal for adjudication of pertinent evidence received after a March 2011 statement of the case. Subsequently, the AOJ readjudicated the appeal and, in September 2015, issued a supplemental statement of the case, thus complying with the Board's remand directives. Stegall v. West, 11 Vet. App. 268 (1998). The appeal is once again before the Board.

The Board observes that at the February 2015 hearing, the representative requested the opportunity to offer testimony on the issues of entitlement to temporary total post-surgical convalescence ratings. At the hearing, the Veteran reported that he had undergone a sympathectomy on each of the left and right upper extremities. In an August 2014 rating decision, the RO deferred the issue of entitlement to a temporary total evaluation due to sympathectomy of the left arm pending a medical opinion. Therefore, as reflected on the title page, that issue is not before the Board. There is no rating decision relating to a temporary total post-surgical convalescence rating for right upper extremity sympathectomy. Hence, the issue was noted at the February 2015 hearing but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Additionally, in August 2014, the Veteran submitted a "notice of disagreement" regarding an alleged denial of a clothing allowance based on service-connected Raynaud's syndrome. Although the Veteran indicated that he had been notified of the denial in August 2014, the claims file is negative for any denial of that benefit. Therefore, the Board does not have jurisdiction over these issues and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015).

This appeal was processed using the Virtual VA and Veterans Benefits Management System paperless claims processing systems. Accordingly, any future consideration of this appellant's case should take into account the existence of these electronic records.

The issue of entitlement to service connection for bilateral carpal tunnel syndrome, to include as secondary to service-connected Raynaud's syndrome, is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDINGS OF FACT

1. Prior to December 22, 2008, the Veteran's Raynaud's disease did not more nearly approximate characteristic attacks occurring four to six times a week.

2. Since December 22, 2008, the Veteran's Raynaud's disease has not more nearly approximated a history of characteristic attacks and two or more digital ulcers.


CONCLUSION OF LAW

The criteria for an increased rating for Raynaud's syndrome, in excess of 10 percent prior to December 22, 2008, and in excess of 40 percent thereafter, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.104, Diagnostic Code 7117 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met. There is no issue as to providing an appropriate application form or completeness of the application. VA notified the Veteran in October 2007 of the information and evidence needed to substantiate and complete the claim, to include notice of what part of that evidence is to be provided by the claimant, what part VA will attempt to obtain, and how disability ratings and effective dates are determined.

VA fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate the claim, and as warranted by law, affording VA examinations. There is no evidence that additional records have yet to be requested, or that additional examinations are in order.

The Veteran's statements in support of the claim are of record, including testimony provided at a hearing before the undersigned Veterans Law Judge. Pertinent here, the Board hearing focused on the elements necessary to substantiate his increased rating claim and the Veteran, through his testimony and his representative's statements, demonstrated that he had actual knowledge of the elements necessary to substantiate the claim for benefits.

Relevant Laws and Regulations

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R. Part 4. The percentage ratings are based on the average impairment of earning capacity as a result of a service-connected disability, and separate diagnostic codes identify the various disabilities and the criteria for specific ratings. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. All reasonable doubt as to the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

While it is necessary to consider the complete medical history of the Veteran's condition in order to evaluate the level of disability and any changes in condition, where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991); Francisco v. Brown, 7 Vet. App. 55 (1994).

In deciding the Veteran's increased evaluation claims, the Board has considered the determinations in Fenderson v. West, 12 Vet. App. 119 (1999) and Hart v. Mansfield, 21 Vet. App. 505 (2007), and whether the Veteran is entitled to an increased evaluation for separate periods based on the facts found during the appeal period.

Raynaud's disease, or Raynaud's syndrome, is rated under 38 C.F.R. § 4.104, Diagnostic Code 7117. A 10 percent rating is warranted for characteristic attacks occurring one to three times a week. A 20 percent rating applies where there are characteristic attacks occurring four to six times a week. A 40 percent evaluation is assigned for characteristic attacks occurring at least daily. With a history of characteristic attacks and two or more digital ulcers, a 60 percent evaluation is assigned. A total, 100 percent evaluation is assigned for two or more digital ulcers plus autoamputation of one or more digits and a history of characteristic attacks. "Characteristic attacks" consist of sequential color changes of the digits of one or more extremities lasting minutes to hours, sometimes with pain and paresthesias, and precipitated by exposure to cold or by emotional upsets. It does not matter how many limbs or extremities are affected. 38 C.F.R. § 4.104, Diagnostic Code 7117, Note.

The Veteran asserts that his Raynaud's disease warrants ratings higher than those currently assigned. He was granted service connection for Raynaud's disease in an August 2000 rating decision. In September 2007, he requested an increased rating, then evaluated as 10 percent disabling.

An August 2007 VA treatment record shows that the Veteran denied rashes, color changes, or sores on his skin but reported progressive paresthesias in both hands and feet. Physical examination was negative for skin lesions.

At a February 2008 VA examination, the Veteran reported that his symptoms had not improved in the last two to three years and that he experienced a sensation of his hands falling asleep. While there was pain in his hands and feet, he took Motrin with good response. The Veteran reported characteristic attacks that occurred about one to three times per week and which lasted about 15 to 30 minutes at a time. During the attacks, the Veteran experienced color changes of white, blue and red, as well as paresthesias and numbness. Attacks were precipitated by exposure to cold and stress. Physical examination revealed Raynaud's syndrome affecting upper and lower extremity digits bilaterally. Examination was negative for auto-amputation or ulcerations.

VA treatment records reveal that in September 2008, the Veteran denied rashes, itching, color change, or sores and physical examination was negative for skin lesions. The following month, his skin was noted to be asymptomatic. Later in October 2008, he denied any ulceration in his extremities. In November 2008, his skin was noted to be intact with good turgor and no rashes or lesions.

VA treatment records further show that although the appellant reported in December 2008 that Raynaud's disease affected him five to six times per day with severe pain, by March 2009, his symptoms had significantly improved to only two to three attacks per day. By May 2009, however, the attacks increased in frequency to about six to seven times per day. In October and November 2009, the Veteran denied experiencing skin rashes and physical examination was negative for skin rashes.

At a January 2010 VA skin examination, the appellant reported non-specific dermatitis which he associated with his Raynaud's condition. He reported that his hands intermittently became dry enough to crack, peel, bleed, and become swollen. He applied topical lotions including Vaseline and aloe vera. Physical examination was negative for a visible rash, cracking or peeling and the examiner diagnosed the Veteran with normal hands, noting no objective findings of non-specific dermatitis.

At a July 2010 VA examination, the appellant reported a 10-year history of a fungal infection on his left foot. While physical examination of both feet revealed scaling, erythema and skin breakdown between the fourth and fifth toes, the examiner diagnosed the Veteran with only left foot tinea pedis. In an addendum, the examiner added that there was also tinea pedis in the right foot.

VA treatment records from June 2012 to November 2013 indicate that the appellant's skin was essentially normal without ulcerations or open lesions. In June 2013, he reported significant improvement in the symptoms associated with Raynaud's disease.

At the February 2015 Board hearing, the Veteran stated that prior to February 2008, he had experienced approximately one to three attacks per week. After February 2008, he reported occasional blister-like rashes, which he claimed he had been told were the result of the Raynaud's disorder. Specifically, he said that he experiences blisters on his hands about once or twice a month and on his feet about once a month. After having surgery in 2012 and 2013 to release pressure in his wrists related to carpal tunnel syndrome, he reported characteristic attacks only about twice a month. The Veteran added that the attacks were worse when the weather was cold and observed that it made working as a letter carrier somewhat challenging because his job duties involved walking and carrying packages. In part as a result of his Raynaud's syndrome, he would call in sick about once or twice a month.

Based on a review of the evidence discussed above, the Board finds that an increased rating is not warranted.

Prior to December 2008, the appellant's Raynaud's syndrome did not result in characteristic attacks occurring four to six times a week. At the February 2008 VA examination, the Veteran reported characteristic attacks occurring about one to three times per week - an estimate he later confirmed as accurate at the February 2015 hearing. While he also indicated that his symptoms began to worsen after February 2008, VA treatment records show that between February 2008 and December 2008, he denied color changes and physical examination revealed asymptomatic skin. The Veteran is competent to testify as to his observations, but this testimony must be weighed against the other evidence of record. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Here, the Veteran's statements at the hearing are outweighed by the descriptions found in the VA treatment records given their consistency and proximity to the time period in question.

From December 2008, the Veteran's Raynaud's syndrome did not result in a history of characteristic attacks and two or more digital ulcers. While the July 2010 VA examiner observed some skin breakdown between the fourth and fifth toes, she attributed it to tinea pedis, not Raynaud's syndrome. Similarly, to the extent the Veteran's January 2010 complaints of intermittent cracking and peeling on his hands could be equated to digital ulcers associated with Raynaud's syndrome, the examiner there found essentially normal hands. VA treatment records show that in October and November 2009, the Veteran denied experiencing skin rashes. VA treatment records from June 2012 to November 2013 indicate that the appellant's skin was essentially normal without ulcerations or open lesions.

The Board acknowledges the Veteran's statements at the February 2015 hearing that he experienced occasional blister-like rashes, which he claimed he had been told were the result of the Raynaud's disorder, and which he essentially argues should be considered digital ulcers for purposes of an increased rating. While the Veteran is competent to identify observable changes in his skin, the assessments appearing in the VA examinations and treatment records carry the most probative value because they were made by medical professionals. See Jandreau, 492 F.3d at 1376-77. As discussed above, these assessments were consistently negative for evidence of two or more digital ulcers. Indeed, during this period, the record reflects that the Veteran often denied experiencing skin rashes.

The weight of the evidence is therefore against an evaluation in excess of 10 percent prior to December 22, 2008, and in excess of 40 percent thereafter. 38 C.F.R. § 4.104, Diagnostic Code 7117. In reaching this conclusion, the Board has considered the applicability of the benefit of the doubt doctrine; however, as the preponderance of the evidence is against the claim, that doctrine is not applicable. 38 U.S.C.A. § 5107(b).

Extraschedular Evaluation

The Board also considered the application of 38 C.F.R. § 3.321(b)(1) (2015), which is applicable in exceptional cases where schedular evaluations are found to be inadequate. The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is therefore adequate, and no referral is required. Thun v. Shinseki, 573 F.3d 1366 (Fed. Cir. 2009).

Here, the rating criteria reasonably describe the Veteran's disability and his symptomatology. The overall disability picture with respect to his Raynaud's disease does not show any significant impairment beyond that contemplated by the ratings already assigned. The Veteran has reported symptoms of pain in his extremities, along with numbness, and discoloration related to Raynaud's syndrome. These symptoms are contemplated within the rating criteria for this disorder, which encompasses all symptoms of "characteristic attacks." Thus, consideration of whether his disability picture exhibits other related factors such as those provided by the regulations as "governing norms" is not required and referral for an extraschedular rating is unnecessary. Thun v. Peake, 22 Vet. App. 111 (2008).

Under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. In this case, the evidence currently before the Board does not indicate that there are additional service-connected disabilities that have not been attributed to a specific service-connected condition. To the extent the development below may result in an award of service connection showing otherwise, consideration of that issue is deferred.

The Board has also considered whether a claim for a total disability based on individual unemployability has been raised. See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). At the hearing, the Veteran reported that although his Raynaud's syndrome impaired his ability to work somewhat, he still was able to maintain employment as a letter carrier and noted that he only missed about one to two days per month, in part due to symptoms associated with Raynaud's syndrome. Hence, as there has been only a negligible effect on employment - more than adequately captured by the 40 percent rating for Raynaud's syndrome and his combined 90 percent disability rating - a claim for a total disability based on individual unemployability has not been raised.


ORDER

Entitlement to an increased rating for Raynaud's syndrome, in excess of 10 percent prior to December 22, 2008, and in excess of 40 percent thereafter, is denied.


REMAND

An addendum opinion regarding the claim for carpal tunnel syndrome is required. In February 2008, a VA nurse practitioner opined that the Veteran's carpal tunnel syndrome had not been caused or aggravated by the service-connected Raynaud's syndrome because "no association between the two could be found in the medical literature." At a September 2005 VA examination, however, in connection with an earlier claim involving Raynaud's syndrome, a VA examiner observed that the Veteran's symptoms of fingertip pain, discoloration and cold sensation were due to Raynaud's syndrome but that bilateral hand pain when gripping may be due to a combination of carpal tunnel syndrome and Raynaud's syndrome. The examiner, an M.D., noted that small studies have frequently shown a higher than expected incidence of carpal tunnel in patients with Raynaud's, and vice-versa, but that in this case, she could not provide an opinion without resorting to speculation. The claims file was not available for review by the examiner.

Moreover, there is some evidence that carpal tunnel syndrome may have onset during service. An April 1994 service treatment record shows that after the Veteran complained of feeling like his hands were asleep, the impression was "compression/carpal tunnel." He also reported swollen and painful joints, as well as bone and joint deformities at his retirement examination. The February 2008 VA examiner failed to address this issue.

Additionally, in the Veteran's March 2009 notice of disagreement, the Veteran stated that he had enclosed a copy of a letter from the Cedars-Sinai Group stating that Raynaud's syndrome causes carpal tunnel syndrome. As the Board's review of the claims file is negative for this evidence, the Veteran should be provided with an opportunity to submit another copy. Finally, any outstanding pertinent VA treatment records should also be associated with the claims file.

Accordingly, the case is REMANDED for the following action:

1. The Veteran should be provided an opportunity to submit evidence relating to his claim for carpal tunnel syndrome, to include any letter from Cedars-Sinai Group stating that Raynaud's syndrome causes carpal tunnel syndrome. After securing any necessary authorization from the Veteran, obtain all identified records not already contained in the claims file, as well as any outstanding VA treatment records pertinent to the claim. If the AOJ cannot locate such records, the AOJ must specifically document the attempts that were made to locate them, and explain in writing why further attempts to locate or obtain any government records would be futile. The AOJ must then: (a) notify the claimant of the specific records that it is unable to obtain; (b) explain the efforts VA has made to obtain that evidence; and (c) describe any further action it will take with respect to the claim. The claimant must then be given an opportunity to respond. 

2. Thereafter, forward the entire claims file in electronic records to a VA examiner with adequate medical knowledge and training, preferably an M.D., or specialist practicing in an area involving carpal tunnel syndrome. The examiner should review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records and lay statements. The rationale for all opinions expressed must be provided. If an opinion cannot be provided without resort to speculation, it must be noted in the opinion report, and a rationale should be provided for that conclusion. If additional examination is indicated, it should be scheduled in accordance with applicable procedures.

(a) The examiner should provide an opinion as to whether it is at least as likely as not (50 percent probability or more) that the service-connected Raynaud's syndrome caused or aggravated (permanently made worse) the appellant's carpal tunnel syndrome. If aggravation is found, the examiner should describe the extent of aggravation in as much detail as possible.

(b) The examiner should also address whether it is as least as likely as not (50 percent probability or more) that the Veteran's carpal tunnel syndrome is in any way directly related to his service. In offering this opinion, the examiner should specifically consider the April 1994 service treatment record showing an impression of "compression/carpal tunnel." 

A complete rationale should accompany any opinion provided.

3. After the development requested has been completed, the AOJ should review any report to ensure that it is in complete compliance with the directives of this remand. If the report is deficient in any manner, the AOJ must implement corrective procedures at once. 

4. After completing any additional development deemed necessary, readjudicate the claim. If the benefit requested on appeal is not granted to the Veteran's satisfaction, the appellant and his representative should be furnished a supplemental statement of the case, and provided an opportunity to respond. The case should then be returned to the Board for further appellate consideration, if in order.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs